UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| GANESAN ALAGAPPAN, Individually and on Behalf of All Others Similarly Situated, | : | Civil Action No. 1:20-cv-03794-RRM-RLM |
|  | : |  |
|  | : | CLASS ACTION |
| Plaintiff, | : |  |
|  | : |  |
| vs. | : |  |
|  | : |  |
| BAIDU, INC., ROBIN YANHONG LI, HERMAN CHENG-CHUN YU and JENNIFER XINZHE LI, | : |  |
|  | : |  |
|  | : |  |
| Defendants. | : |  |
| HARINATH NAMPALLY, Individually and on Behalf of All Others Similarly Situated, | : | Civil Action No. 1:20-cv-04430-RPK-RLM |
|  | : |  |
|  | : | CLASS ACTION |
| Plaintiff, | : |  |
|  | : |  |
| vs. | : |  |
|  | : |  |
| BAIDU, INC., ROBIN YANHONG LI, HERMAN CHENG-CHUN YU and JENNIFER XINZHE LI, | : |  |
|  | : |  |
|  | : |  |
| Defendants. | : |  |

CENTRAL PENNSYLVANIA TEAMSTERS PENSION FUNDS' MEMORANDUM OF LAW
IN OPPOSITION TO THE COMPETING MOTIONS FOR APPOINTMENT AS LEAD
PLAINTIFF

4814-0463-9696.v1

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ...................................................................................................1

II.     ARGUMENT ........................................................................................................2

        A.      Inveriones Is Not Eligible for Appointment as Lead Plaintiff ................................2

        B.      The "Most Adequate Plaintiff" Presumption Lies in Favor of Central
                Pennsylvania Teamsters Pension Funds and Cannot Be Rebutted .........................9

        C.      The Remaining Movants Do Not Qualify for the PSLRA's Presumption.............10

III.    CONCLUSION....................................................................................................11

4814-0463-9696.v1

# TABLE OF AUTHORITIES

**Page**

## CASES

*Bensley v. Falconstor Software, Inc.*,
  277 F.R.D. 231 (E.D.N.Y. 2011) ...................................................................................3, 8

*City of Monroe Emps.' Ret. Sys. v. Hartford Fin. Servs. Grp., Inc.*,
  269 F.R.D. 291 (S.D.N.Y. 2010) ......................................................................................10

*Cohen v. Luckin Coffee Inc.*,
  2020 WL 3127808 (S.D.N.Y. June 12, 2020) ...................................................................8

*Dura Pharm., Inc. v. Broudo*,
  544 U.S. 336 (2005).................................................................................................2, 3, 9

*Galmi v. Teva Pharm. Indus. Ltd.*,
  302 F. Supp. 3d 485 (D. Conn. 2017)................................................................................3

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001).........................................................................................9, 11

*In re Centerline Holdings Co. Sec. Litig.*,
  613 F. Supp. 2d 394 (S.D.N.Y. 2009)................................................................................5

*In re Comverse Tech., Inc. Sec. Litig.*,
  2007 WL 680779 (E.D.N.Y. Mar. 2, 2007)...............................................................2, 3, 5

*In re Netflix, Inc., Sec. Litig.*,
  2012 WL 1496171 (N.D. Cal. Apr. 27, 2012) ...................................................................9

*In re Veeco Instruments, Inc.*,
  233 F.R.D. 330 (S.D.N.Y. 2005) .......................................................................................3

*Khunt v. Alibaba Grp. Holding Ltd.*,
  102 F. Supp. 3d 523 (S.D.N.Y. 2015)................................................................................3

*Lee v. iQIYI, Inc.*,
  2020 WL 6146862 (E.D.N.Y. Oct. 20, 2020)...........................................................1, 6, 7, 8

*Micholle v. Ophthotech Corp.*,
  2018 WL 1307285 (S.D.N.Y. Mar. 13, 2018) ...................................................................3

*Pelletier v. Endo Int'l PLC*,
  2018 WL 3035745 (E.D. Pa. June 19, 2018)...............................................................3, 10

4814-0463-9696.v1

**Page**

*Plaut v. Goldman Sachs Grp., Inc.*,
2019 WL 4512774 (S.D.N.Y. Sept. 19, 2019)..........................................................................3

*Porzio v. Overseas Shipholding Grp.*,
2013 WL 407678 (S.D.N.Y. Feb. 1, 2013)...............................................................................3

*Randall v. Fifth St. Fin. Corp.*,
2016 WL 462479 (S.D.N.Y. Feb. 1, 2016)..............................................................................10

*Sallustro v. CannaVest Corp.*,
93 F. Supp. 3d 265 (S.D.N.Y. 2015)........................................................................................3

*Silverberg v. DryShips Inc.*,
2018 WL 10669653 (E.D.N.Y. Aug. 21, 2018).........................................................................3

*Teamsters Local Union No. 727 Pension Fund v. Vanda Pharm. Inc.*,
2019 WL 7287202 (E.D.N.Y. May 24, 2019) ........................................................................10

*Topping v. Deloitte Touche Tohmatsu CPA*,
95 F. Supp. 3d 607 (S.D.N.Y. 2015)..........................................................................3, 4, 8, 10

*W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*,
549 F.3d 100 (2d Cir. 2008)....................................................................................................9

*Weisz v. Calpine Corp.*,
2002 WL 32818827 (N.D. Cal. Aug. 19, 2002) ......................................................................9

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
§78u-4(a)(3)(B)(iii)(I).............................................................................................................1

Federal Rules of Civil Procedure
Rule 23 ............................................................................................................... *passim*

4814-0463-9696.v1

Central Pennsylvania Teamsters Pension Fund – Defined Benefit Plan and Central Pennsylvania Teamsters Pension Fund – Retirement Income Plan 1987 (collectively, the "Central Pennsylvania Teamsters Pension Funds") respectfully submit this memorandum of law in opposition to the motions filed by: (i) Benjamin Paz Tchimino and Inveriones B Y J Limitada ("Inveriones"); (ii) Houston Municipal Employees Pension System; (iii) Mark Elstob; (iv) Jason Maine; and (v) Nicholas Karant.

## I.    INTRODUCTION

Six lead plaintiff motions were filed by investors seeking appointment as lead plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA").  Under the PSLRA, courts are to "adopt a presumption that the most adequate plaintiff" is the person that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure."  15 U.S.C. §78u-4(a)(3)(B)(iii)(I).  Only the Central Pennsylvania Teamsters Pension Funds satisfy both of these elements.

While Inveriones claims to have suffered a greater loss than the Central Pennsylvania Teamsters Pension Funds, in fact, Inveriones did not suffer *any* harm from the disclosure of defendants' fraudulent conduct.  That is because courts in this District and Circuit overwhelmingly hold that such movants – who sold all their shares before the disclosure of the alleged fraud – do not have any financial interest in the relief sought by the class, and cannot satisfy the Rule 23 requirements because they are subject to unique loss causation defenses.  Inveriones' lead plaintiff application is further undermined by Magistrate Judge Orenstein's recent conclusion in *Lee v. iQIYI, Inc.*, 2020 WL 6146862, at *1 (E.D.N.Y. Oct. 20, 2020), a case based on the same alleged misconduct as here, that a movant could not be appointed lead plaintiff based upon an alleged corrective disclosure pre-dating April 7, 2020.

- 1 -

In contrast, the Central Pennsylvania Teamsters Pension Funds suffered approximately $1.4 million in *recoverable* losses, are typical and adequate, and as institutional investors, are the paradigmatic lead plaintiff candidates. Since the other four movants have significantly smaller financial interests than that of Central Pennsylvania Teamsters Pension Funds, their motions should be denied because they cannot prove that Central Pennsylvania Teamsters Pension Funds should not be appointed.

## II.    ARGUMENT

### A.    Inveriones Is Not Eligible for Appointment as Lead Plaintiff

Under Inveriones and their counsel's *own* theory of the case, Inveriones is ineligible for appointment as lead plaintiff because they *suffered no harm* from the disclosure of defendants' fraudulent conduct. Under the Supreme Court's holding in *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 344 (2005), plaintiffs in securities fraud actions can recover only those losses that are proximately caused by fraud. *Id*. at 345-46. If, however, "the purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss." *Id*. at 342. Defendants would argue that any declines in value experienced by such investors are nothing more than non-recoverable trading losses. Accordingly, "it is clear that under *Dura* and its progeny, any losses that [the movant] may have incurred before [defendants'] misconduct was ever disclosed to the public are not recoverable, because those losses cannot be proximately linked to the misconduct at issue in this litigation." *In re Comverse Tech., Inc. Sec. Litig.*, 2007 WL 680779, at *4 (E.D.N.Y. Mar. 2, 2007).

As a result of Supreme Court precedent set by *Dura*, "'[w]hen evaluating a plaintiff's financial interest for purposes of selecting a lead plaintiff, courts in this Circuit consider that plaintiff's recoverable loss, and do *not* take into account losses from shares sold prior to corrective

- 2 -

disclosures.'" *Silverberg v. DryShips Inc.*, 2018 WL 10669653, at *5 (E.D.N.Y. Aug. 21, 2018).[1]

Beyond improperly inflating a lead plaintiff movant's financial interest, significant in-and-out trading independently subjects the movant to unique loss causation defenses and precludes its ability to satisfy Rule 23's requirements. *See Bensley*, 277 F.R.D. at 241 ("Having considered the parties' respective arguments, the Court finds that the Fund has failed to demonstrate that it will be an adequate lead plaintiff because it was a total in-and-out trader and may be unable to demonstrate loss causation.").[2]

---

[1]    *See Bensley v. Falconstor Software, Inc.*, 277 F.R.D. 231, 238 (E.D.N.Y. 2011) ("'losses result[ing] from "in-and-out" transactions, which took place during the class period, but before the misconduct identified was ever revealed to the public,' are not to be included in loss calculations" on a motion for lead plaintiff); *Comverse*, 2007 WL 680779, at *3 (excluding losses resulting from lead plaintiff movants' "in-and-out" transactions, which took place during the class period, but before the misconduct identified was ever revealed to the public, to determine their respective financial interests); *Plaut v. Goldman Sachs Grp., Inc.*, 2019 WL 4512774, at *4 (S.D.N.Y. Sept. 19, 2019) ("under *Dura*, I am inclined to exclude in-and-out transactions prior to the first alleged corrective disclosure, i.e., those "'losses that [each movant] may have incurred before [Defendants'] misconduct was ever disclosed to the public'"); *Micholle v. Ophthotech Corp.*, 2018 WL 1307285, at * 5 (S.D.N.Y. Mar. 13, 2018) (same); *Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265, 272 (S.D.N.Y. 2015) (same); *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 531 (S.D.N.Y. 2015) (same); *Topping v. Deloitte Touche Tohmatsu CPA*, 95 F. Supp. 3d 607, 617 (S.D.N.Y. 2015) (same); *Galmi v. Teva Pharm. Indus. Ltd.*, 302 F. Supp. 3d 485, 500 (D. Conn. 2017) (same); *see generally Pelletier v. Endo Int'l PLC*, 2018 WL 3035745, at *2 (E.D. Pa. June 19, 2018) ("What the plaintiffs lost is what they may recover. Including losses that were incurred before any disclosure could not have been caused by any disclosures and are not recoverable. Thus, those shares are not included in the 'largest financial interest' calculus."). Unless otherwise noted herein, all emphasis is added and citations and footnotes are omitted.

[2]    *Porzio v. Overseas Shipholding Grp.*, 2013 WL 407678, at *3 (S.D.N.Y. Feb. 1, 2013) ("Even if the alleged losses [of in-and-out traders] could, on some theory, establish the greatest financial interest, the OSG Investor Group cannot make the requisite 'preliminary showing' that it will satisfy the typicality and adequacy requirements of Rule 23. At the very least, the OSG Investor Group is subject to 'unique defenses that render [them] incapable of adequately representing the class,' thus rebutting any presumptive lead plaintiff status."); *In re Veeco Instruments, Inc.*, 233 F.R.D. 330, 333-34 (S.D.N.Y. 2005) (investor who sold stock prior to any corrective disclosure would "at the very least, [be] subject to a unique defense").

- 3 -

4814-0463-9696.v1

Here, the first complaint was filed by Inveriones' proposed lead counsel – The Rosen Law Firm, P.A. – on behalf of a different plaintiff, alleging that the truth behind defendants' alleged fraud began to emerge no earlier than April 7, 2020, when Wolfpack Research released a report detailing how iQIYI had misled investors.  *See* ECF No. 1 at ¶30.  Removing any doubt that Inveriones adopted their counsel's allegations, Inveriones also identified the first disclosure of defendants' alleged fraud as occurring on April 7, 2020 in their memorandum of law in support of their motion for appointment as lead plaintiff.  *See* ECF No. 11 at 3.  The problem for Inveriones is that they sold *all* 112,600 shares of Baidu stock by March 17, 2020, ***three weeks before the first alleged disclosure of defendants' fraud***:

| Dates | Event |
|---|---|
| 4/10/2019 – 2/14/2020 | Inveriones purchased 112,600 Baidu shares.  *See* ECF No. 11-3. |
| 4/16/2019 – 3/17/2020 | Inveriones sells *all* 112,600 Baidu shares *before* any alleged corrective disclosure.  *See id.* |

| | |
|---|---|
| 4/7/2020 | *First alleged corrective disclosure.  See* ECF No. 1 at ¶30 (Inveriones' counsel's complaint detailing when "The Truth Emerges"); ECF No. 11 at 3 (Inveriones alleging that the first corrective disclosure occurred on April 7, 2020).<br><br>*Inveriones is unaffected by this corrective disclosure, as it held no Baidu shares on 4/7/2020.* |

| | |
|---|---|
| 8/13/2020 | *Final alleged corrective disclosure.  See* ECF No. 1 at ¶32; ECF No. 11 at 3.<br><br>*Inveriones is unaffected by this corrective disclosure as it had no additional transactions in Baidu after selling its remaining shares in March 2020.* |

Because Inveriones liquidated their holdings in Baidu by March 17, 2020 – well before the first corrective disclosure under its own theory of the case  – Inveriones does not have any financial interest in the relief sought by the class.  *See, e.g.*, *Topping*, 95 F. Supp. 3d at 618 ("Because Jayhawk did not own any shares of ChinaCast stock during or after the initial March 26, 2012

- 4 -

4814-0463-9696.v1

disclosure alleged in the original Complaint, Ordway and Hong maintain that, for the purposes of the 'greatest financial interest' calculation, Jayhawk suffered *no* losses attributable to the ChinaCast fraud. . . .  The Court agrees.") (emphasis in original).  On this basis, Inveriones' motion should be denied.

Inveriones may attempt to rescue their lead plaintiff candidacy by advancing a different theory of the fraud for the first time in their opposition brief and arguing that their losses stem from an earlier partial disclosure which Inveriones and its counsel at best ignored (or, at worst, abandoned by not referencing it in either their complaint or motion).  Over a month after the *Alagappan* Complaint was filed, a second complaint was filed (the "*Nampally* Complaint") based on the same subject matter as the *Alagappan* Complaint, but alleging the first partial disclosure on May 16, 2019 – over eleven months before the disclosure of the Wolfpack Report.  Even if Inveriones were to belatedly attempt to remedy its lack of loss causation by now adopting the *Nampally* Complaint's theory of the case – ***which it did not do in its counsel's complaint or in its own lead plaintiff papers***[3] – Inveriones' lead plaintiff candidacy cannot be salvaged because the news released on May 16, 2019 was not a plausible partial disclosure of the alleged fraud.[4]  *See In re Centerline Holdings*

---

[3]    *See Comverse*, 2007 WL 680779, at *6 ("[I]t would be unfair to speculate that [a movant] will ultimately be able to demonstrate loss causation for its in-and-out transactions, despite its patent failure to allege [in the complaint] facts in support thereof.").

[4]    It is no coincidence that the *Nampally* Complaint was filed with a May 16, 2019 partial disclosure date.  The same counsel that filed the *Nampally* Complaint also represents movant Houston Municipal Employees Pension System ("HMEPS"), which ***sold its entire holdings of Baidu ADSs by May 17, 2019 – perhaps not so coincidentally, the day after the Nampally Complaint's first alleged partial disclosure***.  *See* ECF Nos. 24-3 and 24-5.  Consequently, without the May 16, 2019 partial disclosure, HMEPS' lead plaintiff candidacy suffers from the same fatal flaw that precludes Inveriones' candidacy because HMEPS suffered no harm by buying and selling all of its holdings in Baidu ADSs before the disclosure of the Wolfpack Report.  The fact that the *Nampally* Complaint appears to have been filed to allow HMEPS to assert loss causation is a red flag portending the implausibility of the May 16, 2019 corrective disclosure.

- 5 -

*Co. Sec. Litig.*, 613 F. Supp. 2d 394 (S.D.N.Y. 2009) (employing plausibility test at lead plaintiff stage to determine legitimacy of earliest alleged day on which investors were deceived).

As alleged in the *Nampally* Complaint, on May 16, 2019, during after-market hours, Baidu issued a press release announcing its financial and operating results for the first quarter of fiscal year 2019, which reported Baidu's first GAAP loss for the first time in 15 years which the Company advised was "'mainly due to increased investments in iQIYI content.'" *Nampally* ECF No. 1 at ¶27. The *Nampally* Complaint also alleged that, on that same date, Baidu hosted an after-market hours earnings call where defendant Herman Cheng-ChunYu explained that Baidu incurred a net loss of CNY 327 million due to, *inter alia*, "'increased loss from iQIYI,'" noting that "'[c]ontent cost was up 47% to CNY 6.2 billion, mainly due to iQIYI's increased investment in content.'" *Id.* at ¶28. This supposed disclosure – which merely revealed Baidu's operating loss due to the increased cost of investment in iQIYI content – starkly contrasts with the disclosure of alleged fraud identified by the Wolfpack Report, which factually detailed "how iQIYI had *misled* investors and failed to disclose pertinent information generally and in its Registration Statement, including; (i) iQIYI *overstating* its user numbers; (ii) iQIYI *inflating* its revenues; (iii) iQIYI *inflating* expenses and prices of assets to conceal its revenue inflation; and (iv) iQIYI using *misleading* financial reporting to create the appearance of a cash generative company." *Id* at ¶34; *see also* ECF No. 1 at ¶30. Because the *Nampally* Complaint does not articulate how the May 16, 2019 partial disclosure revealed any details concerning defendants' allegedly fraudulent misconduct – and neither does Inveriones' motion – there is no basis for this date to serve as a partial disclosure and Inveriones (and HMEPS) cannot – and do not – claim that they suffered losses from this disclosure.

Ironically, less than two weeks ago in the *Lee* action, Magistrate Judge Orenstein ***agreed with the arguments made by Inveriones' own counsel here – on the very same core facts alleged in the***

- 6 -

4814-0463-9696.v1

*instant related actions* – that a movant that was completely in-and-out before the April 7, 2020 Wolfpack Report (but who tried to allege that the Baidu/iQIYI fraud was disclosed over a year before then) was ineligible to serve as a lead plaintiff because it was subject to serious adequacy challenges that threatened to derail the litigation.  *Lee* also alleges fraudulent conduct by Baidu's subsidiary iQIYI, Inc. ("iQIYI"), based on the ***same disclosures*** first revealed in the April 7, 2020 Wolfpack Report that is also at issue in this action.  In *Lee*, Magistrate Judge Orenstein declined to appoint the movant, Le Rivage, LLC, who claimed to have suffered the largest financial loss because at the time of the disclosure of the Wolfpack Report – the same report identified as the basis for the first disclosure in the *Alagappan* Complaint – Le Rivage had already liquidated all of its iQIYI holdings and therefore could not claim "they suffered losses after, and because of, the Report's disclosure of iQIYI's allegedly fraudulent conduct."  *Lee*, 2020 WL 6146862, at *2.  Like Le Rivage, Inveriones cannot claim any loss from the disclosure of defendants' fraudulent conduct revealed by the Wolfpack Report in this case.

In *Lee*, Le Rivage attempted to salvage its candidacy by filing a complaint with an earlier corrective disclosure (like the *Nampally* Complaint does here) and advancing a theory that iQIYI's fraud was revealed 18 months before the Wolfpack Report, wherein iQIYI stated that it had "'cleaned up some not so healthy advertisements on the in-feed side' by 'let[ting] go' of customers who lacked 'documents to prove they are qualified advertisers.'"  *Id*. at *2.  In response, Inveriones' counsel here correctly argued to Magistrate Judge Orenstein not only that "Le Rivage's compensable loss is ***zero***" but that "Le Rivage should also be disqualified" because the "token partial disclosure is contradictory to the entire theory of the case and was added simply to manufacture a loss where there was none."  *See* Exhibit 1 at 8 (attached hereto).  Not only was Magistrate Judge Orenstein skeptical of Le Rivage's "purported ability to detect and respond to iQIYI's fraud over a year before the

- 7 -

4814-0463-9696.v1

release of the Wolfpack Report," the court found that Le Rivage's reliance on an earlier partial disclosure "may subject Le Rivage to uniquely applicable defense arguments and even undermine the claims of other class members who did not sell their iQIYI shares earlier." *Lee*, 2020 WL 6146862, at *2. Accordingly, the court concluded that Le Rivage's loss theory rendered its clams atypical and Le Rivage was inadequate to serve as lead plaintiff. *Id*. For the same reasons as in *Lee*, this Court should find that Inveriones lacks a compensable loss and is therefore ineligible to serve as lead plaintiff.[5]

Finally, the lack of clarity regarding whether it is "Inveriones B Y J Limitada" or Mr. Tchimino's loss that is being pursued by Inveriones' lead plaintiff application represents a further impediment precluding Inveriones' candidacy. Inveriones' undated PSLRA Certifications purport to only set forth "Benjamin Paz Tchimino Transactions" and identify two accounts, "Account 1" and "Account 2." Inveriones is comprised of "Benjamin Paz Tchimino and Inveriones B Y J Limitada." Accordingly, it is not clear which account(s) belongs to Benjamin Paz Tchimino and if any accounts belong to Inveriones B Y J Limitada. *See Cohen v. Luckin Coffee Inc*., 2020 WL 3127808, at *7 (S.D.N.Y. June 12, 2020) ("'[A]t an irreducible minimum, Art[icle] III [of the Constitution] requires the party who invokes the court's authority to show that he personally has suffered some actual or

---

[5]    *Bensley* is also instructive here. In *Bensley*, Magistrate Judge Pollak rejected a movant's assertion that it was not an in-and-out trader because it had sold its shares after an earlier partial disclosure "revealing that the Company's preliminary fourth quarter and full year 2009 results would be far lower than previously forecasted." 277 F.R.D. at 238. The court held that the movant failed to "allege[] sufficient facts from which this Court can confidently infer that the January disclosure actually revealed fraud or misconduct sufficient to qualify as a partial disclosure," noting that "'[t]here was no disclosure in that January announcement that the reason [the company wasn't] making [its] projections was because [it] had engaged in fraud as opposed to the later announcement which was clearly an exposure of the fraud.'" *Id*. at 240. Likewise, here, the alleged May 16, 2019 disclosure in the *Nampally* Complaint was not a plausible partial disclosure, as the Complaint does not allege that it revealed any fraud or misconduct. *See also Topping*, 95 F. Supp. 3d at 617 (earlier purported partial disclosure rejected as it "'did not necessarily shed light on prior misstatements by [defendant] or reveal the prior occurrence of fraud'").

- 8 -

4814-0463-9696.v1

threatened injury as a result of the putatively illegal conduct of the defendant.'")).  If any losses were actually incurred by Inveriones B Y J Limitada, it is likewise unclear – and Mr. Tchimino does not declare – whether he alone has authority and standing to execute Inveriones' Certification on behalf of Inveriones B Y J Limitada under Chilean law in satisfaction of Second Circuit precedent.[6]

### B.  The "Most Adequate Plaintiff" Presumption Lies in Favor of Central Pennsylvania Teamsters Pension Funds and Cannot Be Rebutted

Since Inveriones are ineligible to serve as lead plaintiff, the Court "should then identify the movant with the next largest loss, consider whether that movant satisfies Rule 23's requirements, and repeat this process until a presumptive lead plaintiff is identified." *In re Cendant Corp. Litig*., 264 F.3d 201, 267 (3d Cir. 2001).  Of the remaining movants, with losses of approximately $1.4 million, all of which are recoverable under *Dura*, Central Pennsylvania Teamsters Pension Funds have the greatest financial interest in the relief sought by the class and therefore are the presumptively most adequate plaintiff.  ECF No. 19 at 6-8.

Central Pennsylvania Teamsters Pension Funds are completely typical of the class and are not subject to unique defenses.  Unlike Inveriones, all of Central Pennsylvania Teamsters Pension Funds' losses are recoverable, as they held all of their damaged shares through the April 7, 2020 corrective disclosure.  And as large institutional investors, Central Pennsylvania Teamsters Pension Funds are the paradigmatic lead plaintiff Congress envisioned in enacting the PSLRA.  *See, e.g.*,

---

[6]    *See W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100 (2d Cir. 2008) (finding manager of investments lacked standing to bring securities claims); *see also In re Netflix, Inc., Sec. Litig.*, 2012 WL 1496171, at *4-*5 (N.D. Cal. Apr. 27, 2012) (finding movant does not satisfy the typicality requirement when "colorable issue" of standing was raised after she moved for appointment as lead plaintiff but was "not actually the legal entity who held the account on which her calculation of losses [was] based," rather a "Trust [was]"); *Weisz v. Calpine Corp.*, 2002 WL 32818827, at *6 (N.D. Cal. Aug. 19, 2002) ("Northern Oak provides no information concerning the nature and circumstances under which Northern Oak purchased Calpine stock during the Class Period.").

4814-0463-9696.v1

*City of Monroe Emps.' Ret. Sys. v. Hartford Fin. Servs. Grp., Inc.*, 269 F.R.D. 291, 294 (S.D.N.Y. 2010) ("The drafters of the PSLRA sought to reduce the influence of lawyers on class action securities suits by weighting the determination of lead plaintiff in favor of large institutional investors."). Indeed, "'[m]any courts have demonstrated a clear preference for institutional investors to be appointed as lead plaintiffs' in securities exchange class actions." *Topping*, 95 F. Supp. 3d at 617 n.10; *see also Teamsters Local Union No. 727 Pension Fund v. Vanda Pharm. Inc.*, 2019 WL 7287202, at *4 n.3 (E.D.N.Y. May 24, 2019) ("The Court also notes that Congress prefers institutional investors as the Pension Fund to serve as lead plaintiff in PSLRA cases.").[7]

Because Central Pennsylvania Teamsters Pension Funds clearly have the largest financial interest and satisfy Rule 23's requirements and are preferred institutional investors, Central Pennsylvania Teamsters Pension Funds are presumptively the "most adequate plaintiff."

## C.     The Remaining Movants Do Not Qualify for the PSLRA's Presumption

All of the remaining movants claim smaller losses than Central Pennsylvania Teamsters Pension Funds:

---

[7]     This preference has been determinative in other cases, even when an institutional investor has a slightly lower loss than another potential lead plaintiff. *See, e.g.*, *Randall v. Fifth St. Fin. Corp.*, 2016 WL 462479, at *3 (S.D.N.Y. Feb. 1, 2016) ("The Court bases its decision, then, on the Congressional preference for institutional lead plaintiffs in private securities class actions."); *Pelletier*, 316 F. Supp. 3d at 847 (where individual investors alleged a larger financial interest, court concluded that the "institutional investor preference outweighs the presumptive lead plaintiff rule").

| Remaining Movant | Claimed Loss |
|---|---|
| HMEPS[8] | $766,183 |
| Jason Maine | $294,191 |
| Mark Elstob | $202,983 |
| Nicholas Karant | $127,195 |

Accordingly, the Court should not consider their motions unless the presumption in favor of appointing the Central Pennsylvania Teamsters Pension Funds as lead plaintiff is rebutted. *See Cendant*, 264 F.3d at 263 (the presumption "'may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff will not fairly and adequately protect the interests of the class or is subject to unique defenses that render such plaintiff incapable of adequately representing the class'"). Here, because the Central Pennsylvania Teamsters Pension Funds are willing to serve and satisfy Rule 23's requirements, the competing motions should be denied.

## III.    CONCLUSION

As in-and-out traders, Inveriones (and HMEPS) suffered no harm from the disclosure of defendants' misconduct and are ineligible for appointment as lead plaintiff. In addition, the movants with smaller losses than the Central Pennsylvania Teamsters Pension Funds cannot trigger the most adequate plaintiff presumption. As such, their motions should be denied.

By contrast, the Central Pennsylvania Teamsters Pension Funds have the greatest financial interest in the relief sought by the class and have satisfied each of the PSLRA's requirements for appointment as lead plaintiff and approval of their selection of counsel. The presumption, which lies in favor of Central Pennsylvania Teamsters Pension Funds, cannot be rebutted. Accordingly,

---

[8]    HMEPS and Mr. Maine, like Inveriones, are completely in-and-out before the April 7, 2020 corrective disclosure.

- 11 -

4814-0463-9696.v1

Central Pennsylvania Teamsters Pension Funds respectfully request that the Court grant their motion.

DATED:  November 2, 2020

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
ROBERT M. ROTHMAN
DAVID A. ROSENFELD

_s/ David A. Rosenfeld_
DAVID A. ROSENFELD

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
rrothman@rgrdlaw.com
drosenfeld@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
CHAD JOHNSON
NOAM MANDEL
420 Lexington Avenue
New York, NY  10170
Telephone:  212/693-1058
chadj@rgrdlaw.com
noam@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
JENNIFER N. CARINGAL
MICHAEL ALBERT
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
jcaringal@rgrdlaw.com
malbert@rgrdlaw.com

[Proposed] Lead Counsel for [Proposed] Lead Plaintiff

- 12 -

4814-0463-9696.v1

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on November 2, 2020, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ David A. Rosenfeld
DAVID A. ROSENFELD

ROBBINS GELLER RUDMAN
    & DOWD LLP
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

E-mail:  drosenfeld@rgrdlaw.com

# Mailing Information for a Case 1:20-cv-03794-RRM-RLM Alagappan v. Baidu, Inc. et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Robert Alexander Fumerton**
  robert.fumerton@skadden.com

- **Michael Charles Griffin**
  michael.griffin@skadden.com

- **Laurence Jesse Hasson**
  lhasson@bernlieb.com,birkeland@bernlieb.com,ecf@bernlieb.com

- **Shannon Lee Hopkins**
  shopkins@zlk.com,shalliday@zlk.com

- **Phillip Kim**
  pkim@rosenlegal.com,pkrosenlaw@ecf.courtdrive.com

- **Jeremy Alan Lieberman**
  jalieberman@pomlaw.com,tcrockett@pomlaw.com,disaacson@pomlaw.com,abarbosa@pomlaw.com

- **Gregory B. Linkh**
  glinkh@glancylaw.com,greglinkh@gmail.com

- **Scott D. Musoff**
  smusoff@skadden.com

- **Robert M. Rothman**
  rrothman@rgrdlaw.com,e_file_ny@rgrdlaw.com,e_file_sd@rgrdlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)