# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| GANESAN ALAGAPPAN, Individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> BAIDU, INC., ROBIN YANHONG LI, HERMAN CHENG-CHUN YU, AND JENNIFER XINZHE LI, <br><br> Defendants. | **CASE No.: 1:20-cv-03794-RRM-RLM** <br><br><br> **CLASS ACTION** |
| HARINATH NAMPALLY, Individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> BAIDU, INC., ROBIN YANHONG LI, HERMAN CHENG-CHUN YU, and JENNIFER XINZHE LI, <br><br> Defendants. | **CASE No.: 1:20-cv-04430-RPK-RLM** <br><br><br> **CLASS ACTION** |

**REPLY IN FURTHER SUPPORT OF THE MOTION OF BENJAMIN PAZ TCHIMINO AND INVERIONES B Y J LIMITADA FOR: (1) CONSOLIDATION OF RELATED ACTIONS; (2) APPOINTMENT AS LEAD PLAINTIFFS; AND (3) APPROVAL OF SELECTION OF LEAD COUNSEL**

Benjamin Paz Tchimino and Inveriones B Y J Limitada (collectively, "Paz Tchimino and Inveriones" or "Movants") respectfully submit this reply in further support of their motion for: (1) consolidation of related actions; (2) appointment as Lead Plaintiffs; and (3) approval of The Rosen Law Firm , P.A. ("Rosen Law") as Lead Counsel for the Class. (ECF No. 10).

## PRELIMINARY STATEMENT

Paz Tchimino and Inveriones lost $2,064,160.23.  Only one other movant remains, the Central Pennsylvania Teamsters Pension Fund – Defined Benefit Plan and Central Pennsylvania Teamsters Pension Fund – Retirement Income Plan 1987 (collectively, "Pension Funds")— claiming a loss of $1,403,816.92.

The Pension Funds primarily advance two meritless arguments to challenge the Movants. First, the Pension Funds speculate that Paz Tchimino does not have authority to act on behalf of Inveriones— this is false and contrary to the record.  As explained in the Movants' opening papers Paz Tchimino and his wife are the owners of Inveriones and Paz Tchimino has authority to act on behalf of Inveriones.  Second, the Pension Funds claim that Movants have no financial interest because they are complete "in and out" traders as they purportedly sold all their shares prior to any partial or fully corrective disclosure.  This argument is false.  Movants sold their shares following the May 16, 2019 partial corrective disclosure.

## ARGUMENT

### I.      Paz Tchimino Has Authority Over Inveriones

The Pension Funds speculate that Paz Tchimino may not have the authority to act on behalf of Inveriones.  (ECF No. 31 at 9).  This argument is without merit and contrary to the record. Movants' certifications (ECF Nos. 11, 29) make it clear that Paz Tchimino has the authority to act

on behalf of Inveriones.[1]   Additionally, Movants did segregate their accounts as noted in their certification (ECF No. 11-2 at 4-6) and in their loss chart (ECF No. 11-3).  Paz Tchimino personal account is listed as Account EGA006097 in the loss chart (*Id.*), which has $712,349.58 in losses. Inveriones' account is listed as Account EGA004225, which has $1,351,810.65 in losses.

## II.    Paz Tchimino and Inveriones are Not Complete "In and Out Traders"

Contrary to the Pension Funds, Movants are not complete "in and out traders."  This is not a case that rests on a lone corrective disclosure at the end of the Class Period.  The Pension Funds acknowledge that if the May 16, 2019 announcement is a partially corrective disclosure, then Movants are not complete "in and out traders" and have compensable losses.  (ECF No. 31 at 5-8).  Stated differently, given Movants' losses of $2,064,160.23, if the May 16, 2019 announcement is a partially corrective disclosure, Movants have the largest financial interest and should be appointed Lead Plaintiffs.

On May 16, 2019, Baidu issued a press release announcing its financial results for its first quarter of 2019 ("1Q2019 Financials") (*Nampally* Complaint ¶27). The 1Q2019 Financials revealed a decline in Baidu's deferred revenue from RMB 1.883 billion in the fourth quarter of 2018 to RMB 1.774 billion in the first quarter of 2019 and Baidu's first GAAP loss in fifteen years. This was indicative, in part, of iQIYI's lagging customer growth. Despite the Company's public statements about the booming growth of iQIYI's subscriber base, its financials did not back such rosy claims, and the market took note of the discrepancy.  That same day, the Company held an earnings call where it disclosed that Baidu "incurred net loss of CNY 327 million due to [inter

---

[1] "The only owners and partners of Inveriones are Benjamin Paz Tchimino and his wife." (ECF No. 11 at 2). "Furthermore, Paz Tchimino and Inveriones is a proper lead plaintiff group with a preexisting relationship as ***Paz Tchimino is the owner and partner of Inveriones.***" (Emphasis added.) (ECF No. 29 at 3).

alia] . . . increased loss from iQIYI," (*Nampally* Complaint ¶28). Following the release of 1Q19 Financials and the earnings call, Baidu's ADSs fell $25.39 per share, or 16.52%, to close at $128.31 per share on May 17, 2019. *Nampally* Complaint ¶29).  *Juliar v. Sunopta Inc.*, 2009 WL 1955237, at \*2 (S.D.N.Y. 2009) ("Courts in this District have found that where a putative lead plaintiff sold all its shares after a partial disclosure of misconduct by the defendant but before the final disclosure that led to the lawsuit, that putative lead plaintiff does not face the unique defense of having to show loss causation to the extent that it cannot serve as lead plaintiff."); *Montoya v. Mamma.com Inc.*, 2005 WL 1278097 at \*2 (S.D.N.Y. 2005) (indicating that the *Dura* loss causation requirements do not require full disclosure and can be established by partial disclosure during the class period which causes the price of shares to decline); *In re BearingPoint, Inc. Sec. Litig.*, 232 F.R.D. 534, 544 (E.D. Va. 2006) (stating where "there are multiple disclosures, in-and-out traders may well be able to show a loss" and that "the inflationary effect of a misrepresentation might well diminish over time, even without a corrective disclosure").

The Pension Fund's reliance on Magistrate Orenstein's ruling in *Lee v. iQIYI, Inc.*, 2020 WL 6146862 (E.D.N.Y. 2020) is off the mark for a number of reasons.  First, the partially corrective disclosure in iQIYI is a totally different partially corrective disclosure than the one alleged here.  Second, in iQIYI there was evidence of gamesmanship as the movant in iQIYI filed a new complaint asserting the partially corrective disclosure on the date the lead plaintiff motions were due.  Here, there is no last-minute filing; the May16, 2019 partial disclosure is alleged in the related action that was filed on September 21, 2020.  Additionally, the market reaction in iQIYI to the purported partial disclosure in that case was inconsistent with it being a disclosure of fraud, as

3

iQIYI stock price rebounded the day after the initial drop.[2] Whereas here, Baidu stock fell $21.49/share on May 17, 2019 following the May 16, 2017 after-market disclosures and continued to fall to close $117.55/share on May 20, 2019. Baidu, Inc., Yahoo Finance https://finance.yahoo.com/quote/BIDU/history?p=BIDU (last visited November 9, 2020).

Third, the partial corrective disclosure in iQIYI was not adequately connected to the alleged fraud set forth in the Wolfpack report. (*See* Wolfpack report attached hereto as Ex. 1). Here, the decrease in deferred revenue is directly connected to the allegations of fraud in the Wolfpack report. According to the Wolfpack report, iQIYI reported a decrease in deferred revenue from RMB 2.356 billion in the third quarter of 2018 to RMB 1.960 billion in the first quarter of 2019. (Wolfpack report, at 10). During that same time frame, Baidu's deferred revenue decreased from RMB 1.840 billion in the third quarter of 2018 (*See* Baidu Financial Report for the Third Quarter of 2018, attached hereto as Ex. 2, at 11) to RMB 1.774 billion in the first quarter of 2019 (*See* Baidu Financial Report for the First Quarter of 2019, attached hereto as Ex. 3, at 9). As noted in the Wolfpack report, subscriber growth should have led to "significant growth in deferred revenue as the prepayments accumulated." (Wolfpack report, at 10). The 1Q2019 Financials reported just the opposite. (Baidu Financial Report for the First Quarter of 2019, at 9). Therefore, the decrease in deferred revenue was a partial corrective disclosure, as it is later cited as reason supportive of the Wolfpack report's conclusion of fraud. *See Freudenberg v. E-Trade Fin. Corp.*, 712 F.Supp.2d 171, 202 (S.D.N.Y. 2010) (to meet the requisite Rule 8 notice pleading standard for loss causation, a corrective disclosure need not be a "mirror image" confession of fraud, what

---

[2] The alleged partially corrective disclosure in iQIYI was on October 30, 2018, causing a decline of $2.56/share on October 31, 2018. The next trading day, November 1, 2018, iQIYI stock closed at $22.27. iQIYI, Inc., Yahoo Finance https://finance.yahoo.com/quote/IQ/history?p=IQ (last visited November 9, 2020).

is required is the disclosure of some "truth" that caused economic loss); *In re Vale S.A. Sec. Litig.*, 2017 WL 1102666, at \*29 (S.D.N.Y. Mar. 23, 2017) (same); *In re Tenaris S.A. Sec. Litig. –* F.Supp.3d--, 2020 WL 6018919 at \* 11 (E.D.N.Y. Oct. 9, 2020) (same); *see, also, In re Gentiva Securities Litigation*, 281 F.R.D. 108, 116-17 (E.D.N.Y. 2012) (rejecting the argument that "other movants improperly included regular trading losses from earlier stock sales" because of earlier partially corrective disclosures); *Montoya*, 2005 WL 1278097, at \*2.

For the foregoing reasons, Paz Tchimino and Inveriones have suffered recoverable losses and, therefore, are the presumptive lead plaintiffs.

## CONCLUSION

For the foregoing reasons, the Court should grant the Movants' motion and deny the competing motions.

DATED:  November 9, 2020                Respectfully submitted,

                                                     */s/ Phillip Kim*

                                                     **THE ROSEN LAW FIRM, P.A.**
                                                     Phillip Kim, Esq.
                                                     Laurence M. Rosen, Esq.
                                                     275 Madison Avenue, 40th Floor
                                                     New York, New York 10016
                                                     Telephone: (212) 686-1060
                                                     Fax: (212) 202-3827
                                                     Email: pkim@rosenlegal.com
                                                     Email: lrosen@rosenlegal.com

                                                     *[Proposed] Lead Counsel for Lead Plaintiff and the Class*

5

**CERTIFICATE OF SERVICE**

I hereby certify that on November 9, 2020, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s/ Phillip Kim