UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

              :

IN RE BAIDU, INC. SECURITIES LITIGATION : 20-cv-3794 (DG) (TAM)

              :

              : **ECF CASE**

              :

              : **Oral Argument Requested**

              :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE *BAIDU* ACTION FOR <u>FAILURE TO PLEAD SCIENTER AND LOSS CAUSATION</u>

SKADDEN, ARPS, SLATE
  MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
(212) 735-3000

*Attorneys for Defendants*
*Baidu, Inc., iQIYI, Inc., Robin*
*Yanhong Li, Herman Yu, Yu*
*Gong, and Xiaodong Wang*

Served: November 30, 2022

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT ...........................................................................................................................3

I.    PLAINTIFFS FAIL TO ALLEGE A STRONG INFERENCE OF SCIENTER ................3

      A.    Plaintiffs Fail To Plead Motive ..............................................................................3

      B.    Plaintiffs Fail To Plead Conscious Misbehavior or Recklessness ..........................4

II.   PLAINTIFFS FAIL TO ALLEGE LOSS CAUSATION ....................................................6

CONCLUSION ........................................................................................................................8

i

## TABLE OF AUTHORITIES

Page(s)

### CASES

*ATSI Communications, Inc. v. Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007)................................................................................................3

*In re Bayou Hedge Fund Litigation*,
    534 F. Supp. 2d 405 (S.D.N.Y. 2007).............................................................................4

*In re Centerline Holding Co. Securities Litigation*,
    380 F. App'x 91 (2d. Cir. 2010) .....................................................................................5

*Central States, Southeast & Southwest Areas Pension Fund v. Federal Home Loan*
    *Mortgage Corp.*,
    543 F. App'x 72 (2d Cir. 2013) ......................................................................................6

*Chill v. General Electric Co.*,
    101 F.3d 263 (2d Cir. 1996)............................................................................................3

*Jackson v. Abernathy*,
    960 F.3d 94 (2d Cir. 2020)..............................................................................................4

*Janbay v. Canadian Solar, Inc.*,
    No. 10 Civ. 4430 (RWS), 2012 WL 1080306 (S.D.N.Y. Mar. 30, 2012) ........................6

*Kalnit v. Eichler*,
    264 F.3d 131 (2d Cir. 2001)........................................................................................3, 4

*Lea v. TAL Education Group*,
    837 F. App'x 20 (2d Cir. 2020) ......................................................................................6

*Lee v. iQIYI, Inc..*,
    2020 WL 6146862 (E.D.N.Y. Oct. 20, 2020)..................................................................7

*Lentell v. Merrill Lynch & Co.*,
    396 F.3d 161 (2d Cir. 2005)............................................................................................5

*In re Lions Gate Ent. Corp. Securities Litigation*,
    165 F. Supp. 3d 1 (S.D.N.Y. 2016) ................................................................................5

*Meyer v. Greene*,
    710 F.3d 1189 (11th Cir. 2013) ...................................................................................6, 7

*Sinay v. CNOOC Ltd.*,
    554 F. App'x 40 (2d Cir. 2014) ......................................................................................4

*Singh v. Cigna Corp.*,
918 F.3d 57 (2d Cir. 2019).................................................................................................3

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)...........................................................................................................3

*In re Turquoise Hill Resources Ltd. Securities Litigation*,
No. 13 Civ. 8846 (LGS), 2014 WL 7176187 (S.D.N.Y. Dec. 16, 2014) .......................4, 5

*In re XP Inc. Securities Litigation*,
No. 20-cv-1502, 2021 WL 861917 (E.D.N.Y. Mar. 8, 2021)............................................5

*Zhong Zheng v. Pingtan Marine Entertainment Ltd.*,
379 F. Supp. 3d 164 (E.D.N.Y. 2019) .................................................................................6

## STATUTES

15 U.S.C. § 78u-4(b)(2) ...........................................................................................................1

Defendants Baidu, Inc., iQIYI, Inc., Robin Yanhong Li, Herman Yu, Yu Gong, and Xiaodong Wang ("Defendants") respectfully submit this memorandum of law in support of their additional motion to dismiss the Consolidated Class Action Complaint in the *Baidu* Action (ECF No. 48) ("*Baidu* Compl.") for failure to plead scienter and loss causation, pursuant to this Court's October 6, 2022 Order Granting the Parties' Coordinated Briefing Proposal, Rules 8(a), 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure and Section 101(b) of the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4(b)(2) (the "PSLRA").[1]

## PRELIMINARY STATEMENT

In addition to failing to allege any material misstatement or omission (as demonstrated in the Common Motion to Dismiss), Plaintiffs also fail to allege scienter and loss causation—each of which independently warrants dismissal.

**First**, Plaintiffs' claims should be dismissed because they fail to allege facts giving rise to the requisite strong inference of scienter—*i.e.*, an intent to defraud investors. (*Infra* § I.A.) Plaintiffs assert that Defendants had a financial motive to defraud Baidu's investors over the four-year Class Period from 2016-2020, but they fail to specifically allege any such motive. For example, Plaintiffs do not allege any stock sales by Defendants during the Class Period or any compensation contingent on Baidu's stock price. Instead, Plaintiffs make the unremarkable observation that Baidu owned a majority stake in iQIYI and wanted iQIYI to have a successful

---

[1]   To Defendants' knowledge, Defendant Jennifer Xinzhe Li has not been served. Capitalized terms not defined herein have the meanings ascribed to them in Defendants' Joint Memorandum of Law in Support of the Defendants' Motions to Dismiss for Failure to Allege Any Material Misstatement or Omission ("Common Motion to Dismiss" or "Common MTD"). Defendants hereby incorporate by reference the Common Motion to Dismiss. All citations and internal quotation marks are omitted, and all emphases in quotations are added, unless otherwise indicated.

IPO.  But this universal desire—shared by any parent company or large investor—does not evidence a motive to commit securities fraud.

Plaintiffs' attempt to plead that Defendants were reckless fares no better.  (*Infra* § I.B.) Plaintiffs point to the "core operations" doctrine and to the Sarbanes-Oxley Act ("SOX") certifications signed by certain of the Individual Defendants to insist that they must have known Baidu's statements were false.  But courts routinely reject such conclusory allegations as insufficient to plead scienter.  Plaintiffs also allege that Defendants "delayed" disclosing that the SEC and NASDAQ commenced investigations into the Wolfpack Report's allegations.  But Plaintiffs concede that Defendants had no duty to disclose those investigations at all.  The decision to do so voluntarily and proactively shows candor, not scienter.

**Second**, Plaintiffs' claims independently fail for lack of loss causation.  (*Infra* § II.) Plaintiffs in federal securities cases typically plead loss causation by alleging a drop in the company's stock price when the falsity of the prior misrepresentations was revealed by a "corrective disclosure."  Here, Plaintiffs allege that the Wolfpack Report supposedly revealed misstatements regarding iQIYI in Baidu's public filings.  But the Wolfpack Report does not accuse Baidu of securities fraud or any other wrongdoing.  Moreover, Baidu's ADS price remained flat on the day of the Wolfpack Report, closing at $101.79 compared to $102.94 the day before. iQIYI's ADS price *increased*.  In any event, the Wolfpack Report was expressly based solely on publicly available information.  Plaintiffs also claim that the announcement of the SEC and NASDAQ investigations was a "corrective disclosure," but that neither corrected any prior misstatement by the Company nor implied anything about the veracity of the Wolfpack Report's allegations.  And even then, Baidu's ADS price again held relatively steady.

In any event, Plaintiffs Benjamin Paz Tchimino and Inveriones B Y J Limitada (together, "Inveriones") must be dismissed from this Action because they are in-and-out traders who sold all of their Baidu ADS *before the Wolfpack Report*. Indeed, Inveriones' co-plaintiffs concede that Inveriones has no losses caused by the alleged fraud, as they argued in opposition to Inveriones' motion to be appointed lead plaintiff here. (*See, e.g.*, ECF No. 32 at 3.)

## ARGUMENT

To state a claim for securities fraud under Section 10(b) of the Exchange Act, Plaintiffs must allege, among other things, (1) a material misrepresentation or omission; (2) scienter; and (3) loss causation. *Singh v. Cigna Corp.*, 918 F.3d 57, 62 (2d Cir. 2019). As demonstrated in the Common Motion to Dismiss, Plaintiffs fail to allege a material misrepresentation. Moreover, as demonstrated below, Plaintiffs also fail to plead scienter and loss causation.

## I.   PLAINTIFFS FAIL TO ALLEGE A STRONG INFERENCE OF SCIENTER

Plaintiffs "must state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 314 (2007). The inference of scienter must be "cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Id.* Scienter may be pled through particularized factual allegations showing (i) a "motive and opportunity" to commit fraud, or (ii) "strong circumstantial evidence of conscious misbehavior or recklessness." *ATSI Comms., Inc.*, 493 F.3d at 99. Plaintiffs fail on both counts.

### A.   Plaintiffs Fail To Plead Motive

Plaintiffs do not allege any particularized motive to engage in the alleged fraud. They claim that because Defendants Li and Baidu own a large stake in iQIYI and wanted it to succeed, Defendants had the motive to defraud Baidu's investors. (*Baidu* Compl. ¶¶ 228-29.) Such generic motives, which are common to any parent company or executive, are insufficient to plead scienter.

3

*Chill v. Gen. Elec. Co.*, 101 F.3d 263, 268 (2d Cir. 1996).  Rather, Plaintiffs must point to "concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures alleged."  *Kalnit v. Eichler*, 264 F.3d 131, 139 (2d Cir. 2001).  Here, Plaintiffs do not allege any suspicious stock sales, insider trading, or other compensation contingent on the fruits of the supposed fraud.  Plaintiffs assert that "Baidu had the ability to, and did, enter into myriad related party transactions [with iQIYI] that provided benefits to Baidu" (*Baidu* Compl. ¶¶ 229), but they do not identify any such transactions or allege that they were improper in any way.  Indeed, Plaintiffs do not even try to connect any related party transactions to the alleged fraud.  Accordingly, Plaintiffs fail to allege motive.

### B.       Plaintiffs Fail To Plead Conscious Misbehavior or Recklessness

Having failed to adequately allege motive, Plaintiffs must "produce a stronger inference of recklessness" to plead scienter.  *Kalnit*, 264 F.3d at 143.  To meet this standard, they must "allege facts approaching a knowledgeable participation in the fraud or a deliberate and conscious disregard of facts."  *In re Bayou Hedge Fund Litig.*, 534 F. Supp. 2d 405, 415 (S.D.N.Y. 2007), *aff'd sub nom. S. Cherry St., LLC v. Hennessee Grp. LLC*, 573 F.3d 98 (2d Cir. 2009).

Plaintiffs fail to do so.  They rely principally on the core operations doctrine, asserting that the Individual Defendants—Baidu's and iQIYI's senior executives—must have known of the alleged fraud given the purported importance of iQIYI's performance to Baidu.  (*Baidu* Compl. ¶¶ 209-24.)  But courts routinely hold that "absent particularized allegations of *specific information* Defendants had at their disposal that rendered their statements false or misleading," allegations pointing only to the core importance of information are insufficient to plead scienter.  *See, e.g.*, *Jackson v. Abernathy*, 960 F.3d 94, 99 (2d Cir. 2020) (rejecting plaintiff's "core importance" argument as "plainly insufficient to raise a strong inference" of scienter); *Sinay v. CNOOC Ltd.*,

4

554 F. App'x 40, 42 (2d Cir. 2014) (plaintiffs cannot "sufficiently plead[] scienter based on what [defendant] 'must have known'").   Because Plaintiffs do not allege facts showing any Individual Defendant had access to any specific information contradicting Baidu's statements about iQIYI, Plaintiffs' attempt to invoke the core operations doctrine adds nothing to their inadequate scienter allegations.   For the same reason, Plaintiffs cannot plead scienter by noting that the disclosures at issue contained SOX certifications (*Baidu* Compl. ¶¶ 230-37)—another tactic that courts have universally rejected.  *See, e.g.*, *In re Turquoise Hill Res. Ltd. Sec. Litig.*, No. 13 Civ. 8846 (LGS) 2014 WL 7176187, at *7 (S.D.N.Y. Dec. 16, 2014) (allegations of SOX certifications insufficient to plead scienter absent particularized allegations showing the certifications were not honestly and reasonably believed to be true when made).

Plaintiffs also assert that the timing of Defendants' disclosures regarding the SEC and NASDAQ investigations into the Wolfpack Report's allegations supports an inference of scienter. (*Baidu* Compl. ¶¶ 225-27.)  However, as Plaintiffs effectively concede (*id.* ¶ 227), Defendants had no duty to disclose these investigations at all.  *See In re Lions Gate Ent. Corp. Sec. Litig.*, 165 F. Supp. 3d 1, 12 (S.D.N.Y. 2016) ("[A] government investigation, without more, does not trigger a generalized duty to disclose."); *In re XP Inc. Sec. Litig.*, No. 20-cv-1502, 2021 WL 861917, at *9 (E.D.N.Y. Mar. 8, 2021) ("[S]everal courts have dismissed claims premised on the failure to disclose ongoing regulatory investigations."). Alleged omissions, such as this, "do not provide strong evidence of conscious misbehavior or recklessness" "if the complaint does not present facts indicating a clear duty to disclose." *In re Centerline Holding Co. Sec. Litig.*, 380 F. App'x 91, 93 (2d. Cir. 2010).  Indeed, Defendants' decision to disclose the investigations at all (regardless of timing), notwithstanding the absence of any legal obligation to do so, shows prudence and candor.

Because Plaintiffs' theory of fraud is less cogent and compelling than competing inferences of non-fraudulent intent, their claims fail.

## II.  PLAINTIFFS FAIL TO ALLEGE LOSS CAUSATION

Plaintiffs also must allege that the misstatement or omission "concealed something from the market that, when disclosed, negatively affected the value of the security." *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 173 (2d Cir. 2005).  Plaintiffs contend their losses were caused by two purported corrective disclosures: the Wolfpack Report and the disclosures of the SEC and NASDAQ investigations.  Both theories fail as a matter of law.

Plaintiffs cannot rely on the Wolfpack Report to allege loss causation because Baidu's ADS price remained flat, closing at $101.79 on the day the report was issued (April 7, 2020) compared to $102.94 the day before.  (Ex. Q at 24.)  "Without a corresponding stock price decline, an announcement cannot establish loss causation." *Janbay v. Canadian Solar, Inc.*, No. 10 Civ. 4430 (RWS), 2012 WL 1080306, at *16 (S.D.N.Y. Mar. 30, 2012).  Moreover, the Wolfpack Report did not accuse Baidu of any misconduct, and the ADS price of iQIYI—the actual subject of Wolfpack's attack—*increased* that day.  (Ex. B at 12.)[2]

Recognizing that they cannot base their claims on the Wolfpack Report, Plaintiffs claim it was only a "partial" correction and argue that the "full truth" was not revealed until iQIYI later

---

[2]  Additionally, disclosures that simply repackage already-public information are not "corrective." *Cent. States, Se. & Sw Areas Pension Fund v. Fed. Home Loan Mortg. Corp.*, 543 F. App'x, 72, 75 (2d Cir. 2013) ("[T]hird-party articles and reports express[ing] negative *opinions* . . . based on information that was already publicly available . . . are not 'corrective' for the purpose of pleading loss causation.").  This principle extends to already-public information from "foreign sources." *See, e.g.*, *Zhong Zheng v. Pingtan Marine Enter. Ltd.*, 379 F. Supp. 3d 164, 178 (E.D.N.Y. 2019).  Rather, a corrective disclosure must reveal truly new information to the market, such as inside information from current or former employees. *See, e.g.*, *Lea v. TAL Educ. Grp.*, 837 F. App'x 20, 28 (2d Cir. 2020).  Here, in contrast, the Wolfpack Report expressly states that "*all Information . . . has been obtained from public sources.*"  (Ex. H at 36.)

6

disclosed the SEC and NASDAQ investigations into Wolfpack's allegations. (*Baidu* Compl. ¶¶ 200-07.) But these announcements were not corrective disclosures, as they did not reveal anything about whether iQIYI's prior disclosures were accurate. "The announcement of an investigation reveals just that—an investigation—and nothing more." *Meyer v. Greene*, 710 F.3d 1189, 1201 (11th Cir. 2013); *see also Janbay*, 2012 WL 1080306, at *15 ("The announcement of an SEC subpoena or an internal investigation is itself insufficient to plead loss causation."). While a corresponding stock drop may be attributable to a generalized sense of uncertainty, "[t]hat does not mean that the investigations, in and of themselves, reveal to the market that a company's previous statements were false or fraudulent." *Meyer*, 710 F.3d at 1201.

Additionally, and at a minimum, the Inveriones Plaintiffs must be dismissed, as they sold all their Baidu shares *before* the Wolfpack Report. Indeed, at the lead plaintiff stage, Inveriones' co-plaintiffs (two Central Pennsylvania Teamsters pension funds) argued that Inveriones' lack of loss causation disqualifies them from leading this action: "Because Inveriones liquidated their holdings in Baidu by March 17, 2020—well before the first corrective disclosure under its own theory of the case—Inveriones does not have any financial interest in the relief sought by the class." (ECF No. 31 at 4.) As the Pension Funds highlighted, Judge Orenstein ruled on this same issue in the related *iQIYI* action: "Inveriones' lead plaintiff application is further undermined by Magistrate Judge Orenstein's recent conclusion in *Lee v. iQIYI, Inc.,* 2020 WL 6146862, at *1 (E.D.N.Y. Oct. 20, 2020), a case based on the same alleged misconduct as here, that a movant could not be appointed lead plaintiff based upon an alleged corrective disclosure pre-dating April 7, 2020." (ECF No. 31 at 1.) Like the rejected lead plaintiff in the *iQIYI* action, "Inveriones did not suffer ***any*** harm from the disclosure of defendants' fraudulent conduct." (*Id.* (emphasis in original); *see also* ECF No. 32 at 3 ("[A]fter two rounds of briefing, it is abundantly clear that

7

Inveriones has failed to demonstrate that they have any recoverable loss whatsoever and are therefore ineligible for appointment as lead plaintiffs as they were a complete 'in-and-out trader[.]' . . . Since Inveriones suffered no harm and has no recoverable losses from the disclosure of defendants' fraudulent conduct, Inveriones will be subject to unique loss causation defenses[.]"). After correctly raising these arguments in opposition to Inveriones' lead plaintiff motion, the Pension Funds reversed course and agreed to team up with Inveriones to be co-lead plaintiffs. (ECF No. 44.)  Accordingly, the Court did not have the opportunity to rule on Inveriones' lack of causation.  It can now do so and should dismiss Inveriones from this action.

## CONCLUSION

For the foregoing reasons, and those demonstrated in the Common Motion to Dismiss, the *Baidu* Complaint should be dismissed in its entirety with prejudice.

Dated: New York, New York
        November 30, 2022

Respectfully submitted,

/s/ Robert A. Fumerton
Scott D. Musoff
Robert A. Fumerton
Michael C. Griffin
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
Telephone: (212) 735-3000
scott.musoff@skadden.com
robert.fumerton@skadden.com
michael.griffin@skadden.com

*Attorneys for Defendants Baidu, Inc., iQIYI, Inc., Robin Yanhong Li, Herman Yu, Yu Gong, and Xiaodong Wang*

8